New England Mutual Life Insurance Company et al., Respondents, v I. Austin Kelly et al., Respondents, and David H. Rudner, Appellant.

First Department, December 10, 1985

## APPEARANCES OF COUNSEL

*Robert J. Randell* for appellant, and Saddler Textiles and another, nonparty witnesses.

*Howard Justvig* of counsel *(Anthony C. Acampora* with him on the brief; *Becker Ross Stone DeStefano & Klein,* attorneys), for I. Austin Kelly and another, respondents.

## OPINION OF THE COURT

KASSAL, J.

This interpleader action was brought by an insurer and its agents for a judgment declaring defendants' entitlement to present and future insurance commissions. These had been withheld pending resolution of the dispute between defendants Kelly and Rudner.

The controversy arose out of the relationship between Kelly and Rudner as joint agents who acted as pension consultants under a contract entered into August 26, 1966, providing for a percentage sharing of commissions. The personal acrimony underlying their split-up is not relevant to this appeal. Each has cross-claimed against the other. Kelly alleges that Rudner had induced Kelly's clients to surrender existing insurance policies to be replaced with new insurance, thereby excluding Kelly from any share in commissions. Rudner has cross-claimed for damages as a result of Kelly's interference with Rudner's right to solicit insurance and pension and profit-sharing business from clients.

Insofar as relevant here, Kelly argues that Rudner's action amounted to a breach of his fiduciary obligations and violated the terms of Insurance Law § 127 (now Insurance Law § 2123). The statute (subd [1]) prohibited any misrepresentations to induce policyholders to surrender, forfeit or exchange existing insurance coverage. It also proscribed "any incomplete comparison of any such policies or contracts * * * for the purpose

of inducing, or tending to induce, such person or persons to lapse, forfeit or surrender any insurance policy or contract." There was a further requirement that any comparison of policies or contracts conform to "all the requirements for comparisons established by the superintendent by regulation" (subd [2]). Subdivision (4) provided that violators shall be guilty of a misdemeanor, "unless the same constitutes a felony" and imposed civil penalties as follows: "Any such agent, representative, broker, person, firm, association or corporation who, or which, shall knowingly receive any compensation or commission for the sale of any insurance policy or annuity contract induced by a violation of this section shall also be liable for a civil penalty in the amount received by such violator as compensation or commission, which penalty may be sued for and recovered for his own use and benefit by any person induced to purchase an insurance policy or annuity contract by such violation. In addition, such agent, representative, broker, person, firm, association or corporation violating this section shall be liable for a civil penalty in the amount of any compensation or commission lost by any agent, representative or broker as a result of a violation of this section or the making of such false or misleading statement, which penalty may be sued for and recovered for his own use and benefit by such agent, representative or broker."

Rudner was examined before trial on three dates in January and March 1984. During the deposition, he refused to answer certain questions relating to the surrender of policies of insurance by former joint customers* and asserted his privilege against self-incrimination under CPLR 4501, which authorizes a witness to refuse to give an answer "which will tend to accuse himself of a crime or to expose him to a penalty or forfeiture".

Subsequently, on May 25, 1984, Kelly served notices of deposition and subpoenas upon three nonparty witnesses, all former joint customers, precipitating the motions for multiple relief at issue on this appeal. The witnesses moved for protective orders vacating the notices and quashing the subpoenas and Kelly cross-moved for leave pursuant to CPLR 3101 (a) (4), to examine 37 customers of Rudner and to compel Rudner to respond to those questions which he had previously refused to

---

* The inadequacy of the present record is reflected in the failure of the parties to include the transcript of the deposition. While the record does disclose the questions to which an objection had been taken, the context in which the questions appear is not set forth.

answer. Special Term initially granted the motions for protective relief, directing Kelly to examine plaintiff first but, on reargument, recalled its prior determination, concluding that the examination of the three nonparty witnesses should proceed, with leave to Kelly to reapply for further discovery following the examinations. The court rejected Rudner's assertion of a privilege under CPLR 4501, directing him to respond to each of the questions.

In claiming that the deposition notices as to the nonparty witnesses should be vacated, Rudner contends that Kelly did not proceed properly, in that he did not move first for a court order for leave to depose the nonparty witness on a showing that there were "adequate special circumstance", before serving a subpoena and notice of examination. (CPLR 3101 [a] [4].) At the time, this was the approved practice in this Department *(see, Slabakis v Drizin,* 107 AD2d 45). In 1984, however, the Legislature amended CPLR 3101 (a) (4), to delete the requirement for a court order and to permit discovery "upon notice stating the circumstances or reasons such disclosure is sought or required." (L 1984, ch 294, § 2, eff Sept. 1, 1984.) In *Slabakis v Drizin (supra,* at p 48) we recognized that, despite the legislative enactment, there was no intention to depart from the liberal interpretation of "special circumstances", which is satisfied by a showing by the attorney that he needed the witnesses' pretrial examination to prepare for trial *(see, Villano v Conde Naste Pub.,* 46 AD2d 118, 120; *Kenford Co. v County of Erie,* 41 AD2d 586). Under the circumstances, we find no abuse of discretion in Special Term permitting the examination of the three nonparty witnesses to proceed, with leave to apply for further discovery.

We are in agreement, however, that Special Term did err with respect to the refusal by Rudner to respond to questions in reliance upon his privilege under CPLR 4501. Essentially, Kelly's motion sought rulings upon objections at an examination before trial, which, it has been held, are not appealable. *(Tri-State Pipe Lines Corp. v Sinclair Refining Co.,* 26 AD2d 285; *Spatz v Wide World Travel Serv.,* 70 AD2d 835; *Klein v Schneiderman,* 58 AD2d 763; *Allied Artists Picture Corp. v Raab Prods.,* 38 AD2d 538.) In these and other cases, we dismissed appeals from orders for rulings on examinations as "not appealable", concluding that the parties had "short-circuited" the approved procedure outlined in *Tri-State Pipe Lines Corp. v Sinclair Refining Co. (supra).* The Appellate Division, Second Department, has held to the same effect.

*(Siegal v Arnao,* 61 AD2d 812.) Dismissal has also been directed on the court's own motion. *(Brimberg v Frielich,* 10 AD2d 850.)

In *Tri-State Pipe Lines Corp. (supra)* we recognized that the approved procedure is initially to seek rulings with respect to objections made at an examination before trial, during the progress of the examination, by application before the Justice presiding at Special Term, Part 2, and, following completion of the deposition, move for an order reopening the examination to permit the questions to be answered *(compare, Greenleigh Assoc. v New York Post Corp.,* 79 AD2d 588; *Blitz v Guardian Life Ins. Co.,* 99 AD2d 404). While the route directed to be followed by *Tri-State Pipe Lines* may appear circuitous, the principle has been firmly entrenched in this Department and, as a practical matter, is necessary to the efficient disposition of litigation, ensuring a full and complete record for review at Special Term and any subsequent appeal therefrom. Generally, rulings at Special Term, Part 2, will suffice, preserving for formal review at Special Term, Part 1, only those critical issues which require more exhaustive treatment to avoid prejudice or affect a substantial right. As we observed in *Tri-State Pipe Lines (supra,* at p 286), this "would insure that the party claimant to be aggrieved would make an adequate record demonstrating substantial prejudice as a consequence of the rulings made on the examination before trial. Disposition of any such motion, granting or denying an application to reopen, would then depend upon papers fully disclosing any prejudice to a substantial right of the party. It would thus avoid disruptive appeals during the course of an examination, as well as unnecessary appeals from rulings which did not substantially prejudice the party."

The issue raised on this appeal, namely, Rudner's right to assert his privilege against self-incrimination in relation to the claims made under then Insurance Law § 127, does affect "a substantial right" (CPLR 5701 [a] [2] [v]). It has been held that a party may rely upon the privilege in an action to impress criminal and civil penalties under Insurance Law § 127 (4) *(see, Matter of Siegel v Crawford,* 292 NY 651, *affg* 266 App Div 878). Where the answer may have a possible incriminating effect, the witness cannot be compelled to respond.

As applied here, however, we cannot ascertain on this record to what extent Rudner is entitled to assert the privilege under CPLR 4501. Kelly points to the fact that, although

Insurance Law § 127 (4) expressly provides that a violation of the statute is a misdemeanor, each of the questions related to events which occurred in 1980 and 1981 and any possible criminal prosecution would be barred by the applicable two-year limitations period. (CPL 30.10 [2] [c].) Accordingly, it is asserted that Rudner may not properly invoke the privilege. However, assuming that the conduct occurred in 1980 and 1981, as claimed, there is a critical further issue, as to whether there were acts during the limitations period which affected the surrender or lapse of policies prior thereto, so as to constitute a "continuing wrong" and pose a potential for civil or criminal responsibility in the future. In such case, it is palpably clear that the party could avail himself of the privilege protected by CPLR 4501.

In any event, on this insufficient record, we cannot resolve the issue. Neither party has addressed the critical issue of the continuance of the alleged wrongs. The record only includes the disputed questions, without the transcript of the deposition and there is no indication that the examination has been concluded except for the challenged questions. Under the circumstances, we cannot determine the propriety of Special Term's bare conclusion that there had been a waiver of the privilege "by virtue of answers previously given to questions". This is especially so in light of the prevailing rules which govern the assertion of the privilege against self-incrimination in a civil case (on a question-by-question basis) in contrast to the right accorded a defendant in a criminal case *(see generally, Steinbrecher v Wapnick,* 24 NY2d 354).

While we agree that the issue here is one of substance, the inadequacy of the record and the failure of the parties to address the applicability of the Statute of Limitations in terms of possible continuing wrongs, lead us to the conclusion that, in the present posture, the issue cannot be resolved at this time. Undoubtedly, there will be further proceedings, at which time the parties should fully and adequately address the legal issues in relation to the assertion of the privilege. Since there are vital constitutional and statutory rights to be determined, there must be an adequate record in adherence with established procedural guidelines.

Accordingly, the order, Supreme Court, New York County (Leonard N. Cohen, J.), entered March 25, 1985, which granted three separate motions to reargue and, upon reargument, *inter alia,* directed that the examinations proceed, with leave to apply for further depositions if needed, and directed

appellant to answer questions at his examination, overruling Rudner's assertion of his privilege of self-incrimination under CPLR 4501, should be modified, on the law, to strike the direction in the order that Rudner answer each of the questions and to permit him to assert his privilege under CPLR 4501 to any inquiry not barred by the Statute of Limitations, with the matter remanded to Special Term for further proceedings not inconsistent with this opinion, and otherwise affirmed, without costs or disbursements.

MURPHY, P. J., SULLIVAN, BLOOM and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on March 25, 1985, unanimously modified, on the law, to strike the direction in the order that Rudner answer each of the questions and to permit him to assert his privilege under CPLR 4501 to any inquiry not barred by the Statute of Limitations, with the matter remanded to Special Term for further proceedings not inconsistent with the opinion of this court, and otherwise affirmed, without costs and without disbursements.